IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GARY MACULA, *et al.*, ) | CASE NO.: 1:07 CV 1545 |
| ) | |
| Plaintiffs, ) | JUDGE DONALD C. NUGENT |
| ) | |
| v. ) | |
| ) | |
| LAWYERS TITLE INSURANCE CORP., ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| Defendant. ) | |
| ) | |

This matter is before the Court on Plaintiff Gary Macula's Motion for Class Certification. (ECF # 57). For the reasons set forth below, Plaintiff's Motion is DENIED.

## I. BACKGROUND

This lawsuit was brought by Plaintiff, Gary Macula, against Lawyers Title Insurance Company ("Lawyers Title") on behalf of himself and all others similarly situated. The Complaint alleges that Defendant, a title insurance company, knowingly and routinely charged its customers far in excess of its statutorily-mandated rates.

Plaintiff claims that Defendant is bound by the Manual of Rates filed with the Ohio Department of Insurance ("Rate Manual"), which sets forth the rates that the title insurer agrees to charge the purchaser of the title policy. (ECF # 57 at 6.) The Rate Manual provides that borrowers in refinancing transactions are entitled to a discounted premium rate for the new lender's policy of title insurance, where the title insurer has information indicating that either a prior lender's policy or a prior owner's policy was issued with respect to the property within a specified number of years, referred to as the "look-back period." (*Id.* at 7.) The concept being that, if there existed prior title insurance on the property within the look-back period, the title

company assumes less risk when issuing a new policy on that property. (*Id.*)

More specifically, if the prior policy issued during the look-back period was a lender's policy, and the refinance transaction was completed after February 1, 2002, PR-10 of the Rate Manual applies, entitling the borrower to the discounted "refinance rate." (*Id.* at 7-8.) If, on the other hand, the prior policy was a owner's policy, and a new lender's policy was issued within ten years of that prior owner's policy, then PR-9 of the Rate Manual applies, entitling the borrower to the discounted "reissue rate." (*Id.* at 8.) PR-10 requires that the insurer be given a copy of the prior policy or "other information" sufficient to enable the insurer to identify the prior policy. (*Id.*) PR-9 requires that the insurer be given a copy of the prior policy or "other information" sufficient to enable the insurer to verify the representations made that a prior policy existed. (*Id.*)

In this case, Plaintiff alleges that, since the mid-1990s, Defendant has overcharged individual homeowners, including him, by charging the full price for title insurance (the "Original Rate"), instead of the discounted rates as set forth in PR-10 and PR-9. Plaintiff filed the Complaint on May 25, 2007, seeking declaratory and injunctive relief (Count I) and asserting claims for Breach of Contract (Count II), Fraud (Count III), Breach of Fiduciary Duty (Count IV), Conversion (Count V), Unjust Enrichment (Count VI), Breach of Duty of Good Faith and Fair Dealing (Count VII), and Money Had and Received (Count VIII).

On July 22, 2009, Plaintiff filed the Motion for Class Certification. (ECF # 57.) On August 26, 2009, Defendant filed a Memorandum in Opposition to the Motion for Class Certification. (ECF # 59.) On September 16, 2009, Plaintiff filed a Reply Brief in Support of the Motion for Class Certification. (ECF # 62.) The following day, on September 17, 2009,

Defendant filed a Notice of Supplemental Authority in support of its Opposition to the Motion for Class Certification. (ECF # 64.)

This Court held a hearing on the pending Motion on September 29, 2009. (ECF # 65.) At the hearing, counsel presented thorough arguments in support of and in opposition to the Motion for Class Certification. (*Id.*) In addition, the Court granted counsel leave to file simultaneous supplemental briefs on this issue. (*Id.*) Both Plaintiff and Defendant filed such supplemental briefs with the Court on October 15, 2009. (ECF # 68, # 69.) Thus, the pending Motion is now ripe for review.

## II. STANDARD OF REVIEW

The plaintiff bears the burden of proof in arguing that a potential class should be certified. *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). "The class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (quoting *Mercantile Nat'l Bank at Dallas v. Langdeau*, 371 U.S. 555, 558 (1963)). While the pleadings may be enough to determine "whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim . . . sometimes it may be necessary for the court to probe behind the pleadings" before deciding the issue of certification. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). Thus, it is appropriate for the Court to look not only to the pleadings, but also to additional exhibits and information submitted by the parties in deciding the motion for certification. *See id.*

A court must perform a "rigorous analysis" of the requirements of Federal Rule of Civil Procedure 23 in deciding whether to certify a class. *Falcon*, 457 U.S. at 161; *accord Stout v. J.D.*

*Byrider*, 228 F.3d 709, 716 (6th Cir. 2000). Rule 23(a) of the Federal Rules of Civil Procedure includes four prerequisites to maintaining a class action. FED. R. CIV. P. 23(a). Members of a class:

> [M]ay sue . . . as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* Thus, a class may only be certified under Rule 23 if the requirements of numerosity, commonality, typicality, and adequacy of representation are satisfied. *See id.* Assuming the requirements of Rule 23(a) are satisfied, the class action may be maintained only if it also meets the requirements of one of the subsections in Rule 23(b). FED. R. CIV. P. 23(b). Rule 23(b) provides, in pertinent part, that:

> A class action may be maintained if . . .(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

*Id.* It is with these standards in mind that the instant Motion must be decided.

### III. DISCUSSION

In this case, Plaintiff has moved to certify this matter as a class action, on behalf of a "Plaintiff Class" defined as:

> All persons who (i) paid for a lender's policy of title insurance issued by defendant Lawyers Title Insurance Company in connection with the refinancing of a residential mortgage loan on property located in Ohio that was completed on or after May 25, 2001; (ii) where the subject property previously had been mortgaged within the applicable look-back period; and (iii) paid more than the discounted "reissue" or "refinance" rate for such title insurance.
>
> Excluded from this Class are employees, officers and directors of defendant Lawyers

Title Insurance Company and its subsidiaries or affiliates.

(ECF # 57 at 1.) Plaintiff further claims to have satisfied the requirements of numerosity, commonality, typicality, and adequacy of representation as set forth in Rule 23.

First, Plaintiff claims that the numerosity requirement is satisfied based upon Defendant's records, which reflect "that the members of the Plaintiff Class number in the tens of thousands." (*Id.* at 21.) Plaintiff next argues that there are questions of law or fact that are common to class. (*Id.*) According to Plaintiff, the following are common issues of law and fact in this case:

- What constitutes "other information" as to a prior title insurance policy within the meaning of PR-10 and PR-9;

- What was the scope of [Defendant's] responsibility to monitor and prevent the overcharges by its employees and agents.

(*Id.* at 22 (footnoted omitted).) As to the typicality requirement, Plaintiff contends that:

> [g]iven the mandatory nature of the filed rates, the fact that those rates must be applied in a non-discriminatory manner, and the fact that [Defendant], as part of its routine title examination, obtained all of the information it needed in order to determine whether or not the discounted rate applied, it is manifest that [Plaintiff's] claims are typical of each and every other Class Member.

(*Id.* at 24.) Finally, Plaintiff asserts that he has demonstrated that he will fairly and adequately protect the interests of the class by his agreement to represent the class "and his retention of experienced, competent counsel." (*Id.* at 25.)

Claiming to have satisfied the requirements of numerosity, commonality, typicality, and adequacy of representation, Plaintiff next alleges that this action readily satisfies the predominance and superiority requirements set forth in Rule 23(b)(3). (*Id.* at 26.) At least two decisions within the United States District Court for the Northern District of Ohio, however, have found to the contrary. The first of those decisions is *Chesner v. Stewart Title Guaranty*

*Company*, No. 1:06CV00476, 2009 WL 585823 (N.D. Ohio Jan. 9, 2009).

In the *Chesner* case, the facts were substantially similar to those in the instant case, in that the plaintiffs argued that the defendant overcharged them for title insurance by failing to provide them with the reissue rate, rather than the original rate, in connection with a refinance transaction. *Chesner*, 2009 WL 585823 at *1. The plaintiffs brought the case as a class action, seeking to represent all similarly-situated purchasers of title insurance from the defendant in Ohio on or after January 2000. *Id.* In an order issued on January 23, 2008, the Court certified the plaintiffs' claim for breach of implied contract pursuant to Rule 23. *Id.* The Court denied class certification, however, with respect to the plaintiffs' claims for fraud, breach of fiduciary duty, and unjust enrichment. *Id.*

> The Court explained:
>
> The theory of the case advanced by [p]laintiffs in obtaining class certification was that [the defendant] was required to apply the discounted reissue rate whenever the purchaser was eligible to receive it, and that the purchaser's eligibility was required to be determined by whether or not a prior mortgage existed with respect to the refinanced property within the "look-back" period set forth in the Rate Manual. [The plaintiffs] contend that conformity to applicable law, including insurance regulations such as those in the Rate Manual, is an inferred term of each implied contract, and the failure to charge the discounted rate to eligible purchasers violated the law.
>
> At the core of [the plaintiffs'] theory lies their contention that a prior mortgage in the chain of title during the look-back period necessarily informed [the defendant] that a prior title policy was issued on the property in connection with the previous mortgage. [The plaintiffs] therefore claim that the mere existence of such prior mortgage triggered [the defendant's] obligation to charge the discounted rate specified in the Rate Manual. According to [the plaintiffs], [the defendant's] failure to do so in all cases constituted a breach of the implied contract between [the defendant] and the purchaser of the policy, resulting in damages to the purchaser represented by the difference between the 'original' rate actually charged and the discounted rate [the plaintiffs] contend should have been charged.

*Id.* The defendant subsequently filed a motion for summary judgment and class decertification,

claiming that the plaintiffs' interpretation of the Rate Manual failed as a matter of law and that the class should be decertified because individual issues predominated. *Id.*

In reviewing the defendant's motion, the Court observed that it granted certification based upon the plaintiffs' representation that proof of a prior mortgage, as opposed to proof of an actual prior policy, was sufficient to prove entitlement to the discount. *Id.* at *8. The Court found that this representation was incorrect, however, and that an actual prior policy was necessary to obtain the discount provided in the Rate Manual. *Id.* After finding that not all members of the class possessed such a prior title insurance policy, and that such a prior policy was a necessary prerequisite to entitlement to the discounted reissue rate, the Court found that no class-wide theory of liability existed. *Id.* On this basis, the Court decertified the class. *Id.*

A later decision, namely *Randleman v. Fidelity Nat'l Title Ins. Co.*, No. 3:06 CV 7049, slip. op. (N.D. Ohio Sept. 15, 2009), reached the same conclusion. In *Randleman*, the plaintiffs brought a class action suit seeking to recover money damages against the defendant title insurance company, claiming that it overcharged class members by not providing them with the discount to which they were entitled. *Id.* at 1-2. As in the *Chesner* case, the Court certified the class, and the defendant subsequently filed a motion to decertify the class and for summary judgment. *Id.* at 1.

In setting forth the backdrop against which it certified the plaintiff class, the Court observed that the cornerstone of the plaintiffs' claims, and of class certification, was their contention that any homeowner who had a prior mortgage of record within ten years of a refinancing satisfied the requirement entitling them to the discount. *Id.* at 3. On this basis, the plaintiffs contended that they, as well as the other class members, should have received the

discount. *Id.* The plaintiffs asserted that the discount should have been given even if the refinancing homeowners did nothing affirmative to show that they possessed a prior title policy within the look-back period, and the Court granted class certification on this basis. *Id.*

In considering the motion to decertify the class and for summary judgment, however, the Court found that an actual, prior policy was required to demonstrate entitlement to the discounted rate. *Id.* at 6. It likewise found that, based upon evidence set forth by the defendant, the existence of a prior mortgage within the look-back period is not always indicative of a prior insurance policy. *Id.* at 8. Hence, the Court found that evidence of a prior institutional mortgage within the look-back period does not constitute "other information sufficient to enable the Insurer to identify such prior policy," as required by PR-10 to receive the discounted rate. *Id.* The Court stated:

> Despite [the] plaintiffs' evidence, the fact remains that, even if many, or even most class members had title insurance with their earlier financing, an indeterminate number (and, in all likelihood, not a small, much less legally insignificant number) did not. Whether that number is five percent, ten percent or fifty percent of the class as presently defined does not matter. The class is sufficiently large that, were it to prevail as presently configured, several thousand of its members would receive a refund to which they never were, and never could have been entitled.

*Id.* at 11. Because the Court found that individualized inquiries were required to determine liability and the requirements of Rule 23 were not satisfied, the Court decertified the class. *Id.* at 13.

As set forth above, both *Chesner* and *Randleman* found that there must be an actual prior policy for the discount to apply, and there must exist proof as to which mortgages were, in fact, insured. Based upon the respective plaintiffs' inability to provide classwide proof as to that issue, the decisions in *Chesner* and *Randleman* decertified the class. Under these cases, any

-8-

presumption that an institutional mortgage was insured by a title policy is irrelevant. Along the same lines, any argument as to waiver or discrimination was found to necessitate an individualized inquiry. In both cases, the Court unequivocally found that the only claims that may proceed are those for which prior title insurance actually existed.

Applying those principles to the instant case, the Court is unable to find that questions of law or fact common to class members predominate over any questions affecting only individual members. Because an individualized inquiry is required to determine whether each claimant is entitled to the discounted rate, individual issues predominate. Stated another way, Plaintiff has failed to convince this Court that the *Chesner* and *Randleman* decisions are in error, and the Court finds Plaintiff's Motion for Class Certification to be without merit. Plaintiff bears the burden of proof in arguing that a potential class should be certified. In this case, Plaintiff has failed to meet that burden. Accordingly, based upon the decisions in *Chesner* and *Randleman*, Plaintiff's Motion for Class Certification is DENIED. (ECF # 57).

### IV. CONCLUSION

For the reasons set forth above, the Motion for Class Certification is DENIED. (ECF # 57).

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: November 9, 2009